Warren Winfred STEVENS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 1859.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 15, 1956.

Decided Nov. 20, 1956.

Charles Jay Pilzer, Washington, D. C.,
with whom Harvey A. Jacobs and Irving
Weisblatt, Washington, D. C., were on the
brief, for appellant.

Richard W. Barton, Asst. Corp. Counsel,
with whom Vernon E. West, Corp. Counsel,
Chester H. Gray, Principal Asst. Corp.
Counsel, Milton D. Korman and Hubert B.
Pair, Asst. Corp. Counsel, were on the
brief, for appellee.

Before ROVER, Chief Judge, and
HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

On December 10, 1954, in the Juvenile
Court, appellant acknowledged paternity of
a child born out of wedlock. Judgment of
paternity was entered against him and in
accordance with Code, § 11–959, the re-
quirement of security was suspended and
he was placed on probation on condition
that he comply with any subsequent order
of court. On December 16, 1954, he was
continued on probation and ordered to
make certain weekly payments for the sup-
port of the child and to pay a hospital bill
incident to the birth of the child.

On October 13, 1955, appellant was sum-
moned to appear in court because of his
failure to make the required payments.

Having failed to appear, a bench warrant was issued, but he voluntarily appeared on January 5, 1956. After a hearing he was adjudged to have violated his probation. It was accordingly revoked and he was ordered to furnish a $2,500 bond guaranteeing compliance with the judgment of support, in default of which bond he was committed to jail for a period not exceeding thirty days. The next day he paid something on account of the arrears, whereupon the court set aside the order of commitment, returned him to probation and entered an order of support in a slightly greater amount, designed to cancel the arrearage gradually. At that time he was warned that further failure to comply with the order would result in another commitment.

From the day the commitment order was set aside to May 18, 1956, Stevens made only six of the nineteen payments that became due. He was subpoenaed to appear in court on May 24, 1956, and did so with his attorney. Testimony taken, including his own, showed him admittedly in arrears in payments totaling $91.50, whereupon the court continued him on probation and granted a one week's extension to give him an opportunity to make up the arrears. On May 31, 1956, appellant appeared before the court with counsel. Determining that only a little less than half of the arrears had been paid, the court revoked his probation and appellant was ordered committed to jail for thirty days. The appeal is from this order.

Appellant contends that he was denied due process under the Constitution, and that the court abused its discretion in committing him because all the evidence demonstrated that his failure to comply with the support order was unavoidable, being due to circumstances beyond his control. We do not agree with either contention.

Appellant challenges the process by which he was committed as wanting two requisite elements of a fair hearing: (1) the subpoena which brought him before the court furnished him no notice of the charge or charges he was to face; (2) this and the court's refusal to hear his attorney except as to new matter denied appellant the effective assistance and representation of counsel.

■ The probationer clearly does not stand on equal footing with other citizens.[1] The privilege of probation may be revoked in any procedural fashion authorized by statute. Apart from statute, the probationer, committed summarily, has no recourse to the Constitution[2] by "the sounder and more logical view."[3] He may not "insist upon a trial in any strict or formal sense."[4]

The statute merely provides: "In default of any payments as ordered, the court may revoke probation and commit the defendant to jail for a period of not more than one year at any one time."[5] Neither this provision nor those of our Probation Act[6] furnishes a guide to the procedure Congress intended to be utilized in revoking probations in the District of Columbia. The Supreme Court however has laid down clear standards for us in Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 156, 77 L.Ed. 266,[7] stating:

"The question, then, in the case of the revocation of probation, is * * * simply whether there has been an *abuse of discretion* and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise im-

1. Cooper v. United States, D.C.Mun.App., 48 A.2d 771.

2. Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 820, 79 L.Ed. 1566.

3. Annotation, 29 A.L.R.2d 1074, 1078.

4. Escoe v. Zerbst, supra.

5. Code 1951, Supp. IV, § 11–959.

6. Code 1951, §§ 24–101 to 24–105.

7. See also Basile v. United States, D.C. Mun.App., 38 A.2d 620.

plies conscientious judgment, not arbitrary action. * * * While probation is a matter of grace, the probationer is entitled to *fair treatment,* and is not to be made the victim of whim or caprice." (Emphasis added.)

When Stevens was subpoenaed to appear in court on May 24, 1956, it is obvious that he actually knew he was in arrears and was being brought to court for that reason. When he appeared with counsel a probation officer testified he had previously been telephoned by Stevens who gave as excuses for falling behind in his payments that he had received no wages for one month prior because of an industry-wide strike, during which he was compelled to work on a picket line; that he could not take other employment at that time nor earn sufficient money to make the required payments; and that he was in financial stress because in addition to the support order, he was obliged to support his wife who was then expecting a child. Stevens then testified to the same effect. Counsel for Stevens was asked by the court whether he desired to say anything. He stated to the court that he had been in touch with Stevens' employer; that the latter had told him that Stevens was a steady and conscientious worker who had been employed by him for more than four years and that the employer would undertake, with the consent of Stevens, to send his entire salary directly to the Clerk of the court. At no time did counsel deny that his client was in arrears.

The court continued the hearing for one week and ordered Stevens to appear at the end of the week prepared to make up the arrears, overruling counsel's request for a two weeks' continuance.

Both Stevens and his counsel were notified in writing that this hearing would be held on May 31, 1956; both appeared. A probation officer testified that Stevens was only prepared to pay a little less than half of the amount in arrears, whereupon the court called upon Stevens for any explanation he cared to make concerning his failure to pay the full amount. Stevens testified that the strike had just been settled; that while he had returned to work, he had only earned one week's salary (an amount less than half of the arrears); that he had attempted to borrow funds but had been unsuccessful; and that he had authorized his employer to mail the full amount of his pay check directly to the court. The court then revoked his probation and committed him for thirty days. When Stevens was being led from the courtroom by the United States Marshal, his counsel asked permission to address the court; but as he began his statement he was advised by the court that it was the same statement that he had made the previous week and that the court was not disposed to hear from him further unless he desired to present additional facts. Counsel then advised the court that he intended to appeal and asked for a stay of execution pending appeal, which was denied. This court also denied a stay but ordered his release on bond during the pendency of this appeal.

The facts of this case do not evince arbitrary, capricious or willful treatment of appellant at the hands of the court. He was committed once, released and warned of the action the court would take for defaults in the future. The court waited some eight months, during which period the appellant fell at least twelve payments in arrears, before acting on its warning. Also, the probation officer testified to telephone conversations had with appellant during this period about the arrears. These factors leave little doubt that the probationer actually knew the reason for his being summoned before the court. More importantly, there can be no question but that the probationer was accorded a full opportunity to explain away his default before commitment. The continuance of the hearing enabled Stevens twice to testify fully. On each occasion he was represented by counsel of his choice. This representation was not rendered ineffectual by the court's refusal to hear mere repeti-

tious statements. Finally, appellant's probation was revoked and he was committed in default of furnishing bond guaranteeing the court judgment. This treatment could only be described as eminently fair. For the child's welfare it must be brought home to appellant that he cannot regard lightly his support obligations.

We likewise find appellant's argument that the court abused its discretion without merit. The contention is that Stevens' failure to obey the order "was the result of unavoidable casualty and circumstances beyond his control," namely, the conditions brought about by the strike. The court pointed out at the first hearing that had his failure been limited to the strike period, leniency might well have been extended to him; but the record showed that while he was at least twelve payments in arrears, eight of these payments fell due *prior* to the time the strike was called. We deem this a sound exercise of the court's discretion.

Affirmed.